Ivy Ngo (S.B.N. 249860)
**FREEDMAN NORMAND FRIEDLAND LLP**
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
T: (646) 350-0527
Email: ingo@fnf.law

Edward Normand (*pro hac vice* forthcoming)
Kyle Roche (*pro hac vice* forthcoming)
Velvel Freedman (*pro hac vice* forthcoming)
Alex Potter (*pro hac vice* forthcoming)
**FREEDMAN NORMAND FRIEDLAND LLP**
155 E. 44th Street, Suite 905
New York, NY 10017
(T): (646) 350-0527
Email: tnormand@fnf.law
          kroche@fnf.law
          vel@fnf.law
          apotter@fnf.law

Tibor L. Nagy Jr. (*pro hac vice* forthcoming)
Tracy O. Appleton (*pro hac vice* forthcoming)
Chris Schafbuch (*pro hac vice* forthcoming)
David Moosmann (*pro hac vice* forthcoming)
**DONTZIN NAGY & FLEISSIG**
31 E 62nd Street
New York, NY 10065
(T): (212) 717-2900
Email: tibor@dnfllp.com
          tappleton@dnfllp.com
          cschafbuch@dnfllp.com
          dmoosmann@dnfllp.com

*Counsel for Brittany Edwards, on behalf of D.B. Barlow*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANY EDWARDS, on behalf of D.B. BARLOW,<br><br>  Petitioner<br><br>  v.<br><br>TIKTOK, INC.,<br><br>  Respondent. | C.A. No. _____<br><br>**CLASS ACTION PETITION TO COMPEL ARBITRATION** |

Petitioner, Brittany Edwards (as the guardian of D.B. Barlow), individually and on behalf of all others similarly situated, brings this class action petition to compel TikTok, Inc. ("TikTok") to arbitrate this dispute and the thousands of others similar to it which seek to hold TikTok responsible for the years it has spent illegally spying on and manipulating the children who use its deeply problematic application.

TikTok has been at the center of a global controversy since it was caught spying on, and stealing sensitive personal information from, millions of its users. Many of those users are children. Tens of thousands of those minors' guardians—and individual users of TikTok—are trying to bring individual arbitrations against TikTok pursuant to the arbitration clause that TikTok required its users to assent to as part of its user agreement. But TikTok has refused to arbitrate any of these claims and is forcing Petitioner (and all others like her) to pay all arbitration fees herself, contrary to the applicable arbitration rules. Accordingly, Petitioner must petition this Court for an order compelling arbitration for her and the thousands of other parents, guardians, and individuals that TikTok is stonewalling.

**I.    NATURE OF PETITION**

1.    Petitioner's thirteen-year-old daughter first downloaded TikTok in 2019 when she was just eight years old. When Petitioner allowed her daughter to first download TikTok, she believed the app was a safe and silly platform for her daughter and her friends to share dance videos. That assumption turned out to be false: in reality, TikTok is anything but safe for children.

2.    In a reckless drive to maximize advertising revenue in the United States, TikTok designed and marketed its social media platform to be insidiously addictive to our nation's most vulnerable: children. It then deceptively advertised its platform as safe for children, fully aware

1  that children are uniquely susceptible to harms arising out of compulsive use of social media
2  platforms like TikTok. The defective design of its platform has substantially contributed to a
3  mental health crisis affecting millions of children in the United States.

4      3.    In addition to its gross negligence with respect to minor safety, TikTok
5  surreptitiously has intercepted the private electronic communications of users of TikTok and its
6  integrated website browser (the "In-app Browser") without their consent. TikTok intercepts these
7  private electronic communications in violation of the federal Wiretap Act, 18 U.S.C. §§ 2510 *et*
8  *seq.*, by embedding JavaScript code into the third-party websites accessed using TikTok's In-
9  app Browser. The code enables TikTok to track users' conduct and communications with the
10 third-party websites, including mouse movements, clicks, keystrokes (e.g., text being entered
11 into an information field or text box), URLs of web pages visited, and other electronic
12 communications in real time (collectively, "Website Communications").

13     4.    As this conduct came to light, Petitioner decided to hold TikTok accountable for
14 its behavior. Petitioner, and tens of thousands of other legal guardians of children that used
15 TikTok, along with adult users of TikTok, constitute a class of TikTok users (the "Class") who
16 wish to hold the company accountable through arbitration for the misconduct that occurred on
17 its platform from February 2019 through July 2023 (the "Class Period"). During this period,
18 anyone who signed up for TikTok agreed to and accepted the TikTok Terms of Service (the
19 "Original User Agreement," attached as Exhibit 1).

20     5.    The Original User Agreement contains an arbitration clause that governs any
21 dispute "relating in any way to your use of TikTok's services and/or products." Ex. 1 at 15. The
22 arbitration is to be administered by the American Arbitration Association "under its rules
23

1  including, if you are an individual, the AAA's Supplementary Procedures for Consumer-Related Disputes." *Id.*

2  6. In July 2023, as TikTok's legal concerns grew, the company quietly changed its user agreement to remove the arbitration clause and instead imposed a venue provision requiring all U.S. plaintiffs to file their claims in federal or state court in California. Ex. 2 at 18 (the "Amended User Agreement"). Unlike the broad arbitration clause in the Original User Agreement—which applies to any dispute relating in any way to the "use of TikTok's services and/or products"—the venue provision is narrower, applying only to disputes "arising out of or relating to **these Terms**." *Id.* (emphasis added). The Amended User Agreement also purports to unilaterally impose a one-year statute of limitations for all claims brought under the agreement.

7. The straightforward reading of these two agreements is that the Original User Agreement governs all claims arising prior to the issuance of the Amended User Agreement, and the Amended User Agreement, to the extent it is applicable, governs only claims arising thereafter. Consistent with this reading, the Original User Agreement contains a provision stating that "[t]his arbitration provision **will survive any termination of these Terms**." Ex. 1 at 15 (emphasis added). This makes additional sense, because application of the Amended User Agreement to claims that arose **prior** to its existence would result in the immediate termination of claims older than one-year old—essentially a backdoor waiver of liability.

8. As explained more fully below, however, when Petitioner informed TikTok of her desire to arbitrate claims that accrued under the Original User Agreement, TikTok refused and claimed that all claims against the company were now governed exclusively by the Amended User Agreement. When Petitioner proceeded in arbitration, the AAA agreed with Petitioner and ordered the arbitration to move forward. Yet, TikTok has failed to meaningfully comply with

the AAA's directive. TikTok has, among other things, refused to pay certain costs of arbitration, forcing Petitioner to bear that financial burden, and has refused to answer her arbitration demand.

9. TikTok's refusal to honor its contract, participate in arbitration, and pay its share of the filing fees deprives Petitioner and the Class of the ability to proceed with their arbitrations under the very terms that TikTok itself selected and imposed.

10. This Court should put an end to TikTok's gamesmanship. As Judge Alsup aptly noted in a similar and instructive case: "The irony, in this case, is that the [customers] wish to enforce the very [arbitration] provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them. [But TikTok], faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. . . . This hypocrisy will not be blessed." *Abernathy v. DoorDash, Inc.*, 438 F. Supp. 3d 1062, 1067–68 (N.D. Cal. 2020).

11. Petitioner has filed this Petition to require TikTok to abide by the arbitration agreement it drafted, and she seeks through Rule 23(b)(2) similar injunctive relief on behalf of the Class of other parents and guardians of minor Tiktok users, along with adult users of TikTok, who are trying to arbitrate their claims against TikTok.

**PARTIES**

12. Petitioner, Brittany Edwards, is the mother and guardian of D. B. Barlow, her thirteen-year-old daughter, and they are both residents of Hartford, Connecticut. Petitioner's daughter has used the TikTok app since 2019. Tens of thousands of other Class members have retained undersigned counsel to represent them in substantively identical individual arbitrations against TikTok.

13. Respondent, TikTok, Inc., is a for-profit entity, incorporated in the State of California, which operates a social media application and platform known as "TikTok." TikTok Inc. is headquartered at 5800 Bristol Pkwy, Culver City, CA, 90230-6696.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 9 U.S.C. § 4 and 28 U.S.C. §§ 1331 and 1367 because the underlying controversy involves claims arising under federal law.

15. This Court has general personal jurisdiction over Defendant TikTok because it is both incorporated and headquartered in the state of California.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because TikTok resides in this judicial district.

## FACTUAL BACKGROUND

### A. The Original User Agreement

17. Since its 2018 U.S. launch, TikTok has become the most downloaded and popular app in the United States. In March 2023, TikTok boasted "150 million American" users. On average, American children use the app nearly two hours per day. Twenty-five percent of 13 to 17-year-old kids report using TikTok "almost constantly" and over a third admit that the time they spend on social media is "too much." And polling has shown almost half of Gen Z wish that TikTok was never invented.

18. TikTok has generated eye-popping revenue: nearly $10 billion in 2022, and an estimated $13.5 billion in 2023. This rapid rise is not an accident; it is the result of TikTok's calculated efforts to induce young people to compulsively use its product. It has surpassed other social media apps in terms of participation, content, and types of interaction.

19. Petitioner's daughter—like millions of other children and young adults—first downloaded TikTok in 2019. She was only eight years old at the time. And like all those who created accounts with TikTok prior to July 2023, she used the TikTok app subject to the terms of the Original User Agreement.

20. The Original User Agreement contains a broad arbitration clause that governs any dispute "relating in any way to your use of TikTok's services and/or products." Ex. 1 at 15. The arbitration is to be administered by the American Arbitration Association "under its rules including, if you are an individual, the AAA's Supplemental Procedures for Consumer-Related Disputes."

21. The Original User Agreement also contains a provision stating: "This arbitration provision **will survive any termination of these Terms**." Ex. 1 at 15 (emphasis added).

**B.   As TikTok Faces Surging Legal Scrutiny, It Quietly Changes its Terms of Service**

22. Beginning in 2023, numerous experts and public officials began sounding the alarm on both the dangers associated with adolescent use of TikTok and privacy concerns related to the way TikTok records and uses its consumers' behaviors.

23. Now we know—as recognized by 46 state attorneys general, numerous public health experts, and national reporting—that TikTok's conduct has fueled an ongoing mental health crisis in many American users, especially children and teens. Drawing inspiration from techniques used by the gambling and tobacco industries, TikTok deliberately embedded design features in its platform to create a product that drives compulsive use.

24. Since these revelations, TikTok has faced an onslaught of criticism and legal action from Congress, regulators, and private individuals.

25. As reported by the *New York Times*, TikTok's response to this mounting criticism was to surreptitiously change its terms of service to alter the procedures for asserting claims against the company. *See* S. Maheshwari, *TikTok Quietly Changes User Terms Amid Growing Legal Scrutiny*, NEW YORK TIMES, https://www.nytimes.com/2023/12/14/business/media/tiktok-changes-user-terms.html (Dec. 14, 2023). The dispute resolution provisions of the Amended User Agreement differ from those of the Original User Agreement in at least three ways.

26. *First*, the Amended User Agreement provides that all claims "arising out of or relating to these Terms shall also be resolved exclusively in the U.S. District Court for the Central District of California or the Superior Court of the State of California, County of Los Angeles." Ex. 2 at 18. Disputes under the Original User Agreement must proceed in arbitration.

27. *Second*, the Amended User Agreement contains a choice of law provision under which any dispute "arising out of or relating to the Terms will be governed by the laws of the State of California." *Id*. The Original User Agreement contained no choice of law provision.

28. *Third*, the Amended User Agreement provides for a contractually modified limitations period requiring all claims to be brought within one year from the date the cause of action accrues. The limitations period states:

> YOU AND TIKTOK AGREE THAT YOU MUST INITIATE ANY PROCEEDING OR ACTION WITHIN ONE (1) YEAR OF THE DATE OF THE OCCURRENCE OF THE EVENT OR FACTS GIVING RISE TO A DISPUTE THAT IS ARISING OUT OF OR RELATED TO THESE TERMS. OTHERWISE, YOU FOREVER WAIVE THE RIGHT TO PURSUE ANY CLAIM OR CAUSE OF ACTION, OF ANY KIND OR CHARACTER, BASED ON SUCH EVENTS OR FACTS, AND SUCH CLAIM(S) OR CAUSE(S) OF ACTION ARE PERMANENTLY BARRED.

**C.     Petitioner Files Her Demand with AAA and TikTok Refuses to Arbitrate**

29. On December 17, 2023, counsel for Petitioner notified TikTok of their intent to bring arbitration on behalf of tens of thousands of TikTok account holders for claims accruing

**before** July 2023, *i.e.*, the date TikTok changed its terms of service. Counsel provided this notice pursuant to the informal dispute resolution procedures contained in the Original User Agreement. *See* Ex. 1 at 15.

30. Between January and March 2024, counsel for Petitioner and counsel for TikTok discussed the parties' respective positions concerning the substantive claims and the appropriate procedures for dispute resolution. During this correspondence, TikTok took the position that the Amended User Agreement applied to claims that accrued both **before and after** the effective date of that agreement, and accordingly, that the company would not consent to proceeding in the AAA.

31. On March 29, 2024, Petitioner filed her demand against TikTok in the AAA asserting product liability claims arising under state law and wiretapping claims arising under state and federal law.

32. On May 6, 2024, TikTok argued to the AAA that it has "no agreement with Claimant (or her minor daughter) to arbitrate disputes with AAA." Ex. 3 at 1. TikTok asserted that the Original User Agreement was "**void**" and "**superseded**" by the Amended User Agreement which "replaced arbitration with an exclusive venue provision requiring that all disputes **(regardless of when they arose)**" be brought in the U.S. District Court for the Central District of California or the Superior Court of the State of California, County of Los Angeles. *Id.* (emphasis added).

33. On May 17, 2024, Petitioner responded that the Original User Agreement controlled this dispute: "Under the Original User Agreement, an arbitrator appointed by the AAA 'will have exclusive authority to resolve any dispute relating to the interpretation, applicability, unconscionability, arbitrability, enforceability, or formation of this arbitration agreement,

1  **including any claim that all or any part of this arbitration agreement is void or voidable**.'" Ex. 4 at 1 (quoting Original User Agreement at 16). Accordingly, the plain language of the Original User Agreement **requires** that the AAA, and not a court, determine TikTok's arguments concerning voidability.

34. In any forum, TikTok's position that the arbitration clause in the Original User Agreement is void is contradicted by the plain language of that agreement, which states: "This arbitration provision **will survive any termination of these Terms.**" Ex. 4 at 1-2 (quoting Original User Agreement at 15). And the broad arbitration clause in the Original User Agreement applies to any dispute relating in any way to the "use of TikTok's services and/or products," Ex. 1 at 15, whereas the Amended User Agreement's venue provision is narrower, applying only to disputes "arising out of or relating to **these Terms**," Ex. 2 at 18 (emphasis added).

35. This commonsense reading avoids the absurd result that TikTok implicitly seeks. If TikTok's argument were true, then each user who assented to the terms of the Amended User Agreement (even if they were minor children) agreed to forever waive and release claims against TikTok that were more than one year old. Such a back-door release is not only unconscionable but is contrary to the plain meaning of the two agreements at issue: the Original User Agreement controls dispute resolution for (at a minimum) claims that accrued before July 2023, and the Amended User Agreement, to the extent it is enforceable, governs dispute resolution for claims arising under it after its effective date (*i.e.*, sometime after its July 2023).

36. On June 2, 2024, the AAA agreed with Petitioner, stating: "After careful review of the parties' comments, the AAA has determined the claimant has met the filing Requirements" and that "[a]ny further dispute regarding the arbitrability of this claim should be raised to the

1 arbitrator for a determination once one has been appointed." Ex. 5 at 1. The AAA then directed
2 that TikTok pay the $625 filing fee by June 17, 2024. *Id.*

3   37.   Since that ruling, TikTok has refused to pay the filing fee as instructed by AAA. As a result, and to avoid any procedural prejudice, Petitioner has advanced the filing fees TikTok owes to AAA. Since the AAA's ruling, TikTok has refused to materially participate in the arbitration. It failed to file an Answer to Petitioner's consumer demand, and has continued to protest the AAA's jurisdiction to hear the case.

8   38.   Tens of thousands of individuals seek to assert claims that arose under the Original User Agreement against TikTok. And it is uncontroverted that, from February 2019 through July 2023, disputes between TikTok users and TikTok were governed by a binding arbitration agreement to be administered by the AAA. Thousands of these Class members—representing tens of thousands of children—have already retained undersigned counsel to represent them in arbitration. Yet TikTok refuses to arbitrate any of the Class members' claims. And it has done so despite having once used the threat of enforcing the exact same arbitration agreement to obtain a class-wide settlement at a value that many objectors argued was unfair. *See In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 941 (N.D. Ill. 2022) ("[TikTok] ha[s] a wide array of defenses to Plaintiffs' claims, some of which—the arbitration clause in particular—are more than 'plausible.'").

19   39.   TikTok's procedural gamesmanship should not be rewarded, especially as it flies in the face of the plain language of the agreements it drafted.

**CLASS ACTION ALLEGATIONS**

22   40.   This is a class action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure on behalf of the following Class: All persons, and the legal guardians of persons,

who created a TikTok account during the Class Period and whose claims TikTok has refused to arbitrate under the Original User Agreement.

41. Excluded from the Class are: (1) the Court (including any Judge or Magistrate presiding over this action and any members of their families); (2) Defendant, its subsidiaries, parents, predecessors, successors and assigns, including any entity in which any of them have a controlling interest and its officers, directors, employees, affiliates, legal representatives; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel, Class counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

42. **Ascertainability**: Membership of the Class is defined based on objective criteria and individual members will be identifiable from TikTok's records (including from TikTok's massive data storage and consumer accounts) and from undersigned counsel's records, which can identify the tens of thousands of Class members that are attempting to arbitrate their respective disputes with TikTok and have sought undersigned counsel's assistance in doing so. Based on information readily accessible to it, TikTok can identify members of the Class who created accounts prior to the release of the Amended User Agreement.

43. **Numerosity**: The Class consists of tens of thousands of individuals. Accordingly, members of the Class are so numerous that joinder of all members is impracticable. Class members may be identified from TikTok's records, including from its consumer accounts.

44. **Typicality**: Petitioner's claims are typical of the claims of other Class members, as TikTok has refused to arbitrate any claims that arose under the Original User Agreement.

45. **Adequacy of Representation**: Petitioner will fairly and adequately protect the interests of the members of the Class—and has retained counsel that is competent and experienced in class action litigation, including nationwide class actions and privacy violations—to ensure that the Class members are able to enforce their respective rights to arbitrate any dispute with TikTok that arose under the Original User Agreement. Petitioner and her counsel have no interest in conflict with, or otherwise antagonistic to the interests of, the other Class members. Petitioner and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so.

46. **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. This proposed class action presents fewer management difficulties than individual litigation and provides the benefits of a single adjudication, economies of scale and comprehensive supervision by a single, able court.

47. **Injunctive Relief Class**: Under Rule 23(b)(2), a court may grant injunctive or declaratory relief when "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Here, TikTok has refused to honor its contractual obligations to arbitrate any claims governed by the Original User Agreement in a manner that generally applies to the entire Class.

## COUNT I

**9 U.S. Code § 4 – Failure to Arbitrate Under Agreement**

48. Petitioner repeats and re-alleges the allegations of Paragraph 1 through 47 as if fully set forth herein.

49. Petitioner and Class members entered into a valid agreement with TikTok requiring them to arbitrate all claims arising under that agreement before the AAA.

50. TikTok breached that agreement because it refused to comply with AAA's administrative determinations regarding the filing fees it must pay under the agreement—fees AAA requires before it will empanel arbitrators and begin Petitioner's arbitrations—and has refused to arbitrate any of the Class members' claims that arose during the Class Period.

51. Until TikTok complies with AAA's administrative determinations, Petitioner and other Class members will be prejudiced because they will need to pay TikTok's obligations to the AAA with significant risk that TikTok will not meaningfully participate in those proceedings.

52. The Federal Arbitration Act, 9 U.S.C. § 4 provides: "A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration **proceed in the manner provided for in such agreement**." (emphasis added).

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court enter an order granting the following relief:

A. Certifying this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

B. Appointing Petitioner to represent the Class;

C. Appointing undersigned counsel to represent the Class;

D. Ordering, pursuant to 9 U.S.C. § 4, TikTok to arbitrate the Class members' claims that accrued under the Original User Agreement, including by paying AAA's

arbitration fees and costs, which are necessary to empanel arbitrators and proceed with arbitrations;

E. Ordering that, pursuant to Cal. Code Civ. Proc. § 1281.12, all claims by Petitioner and the Class are tolled "from the date the civil action is commenced until 30 days after a final determination by the court that [TikTok] is required to arbitrate the controversy, or 30 days after the final termination of the civil action that was commenced and initiated the tolling, whichever date occurs first."

F. Awarding reasonable attorneys' fees, costs, and expenses; and

G. Granting such other relief as the Court deems just and proper.

Dated: September 24, 2024

*/s/ Ivy Ngo*
Ivy Ngo (S.B.N. 249860)
**FREEDMAN NORMAND FRIEDLAND LLP**
2029 Century Park East, Suite 400N
Los Angeles, CA 90067
T: (646) 350-0527
Email: ingo@fnf.law

Edward Normand (*phv* forthcoming)
Kyle Roche (*phv* forthcoming)
Velvel Freedman (*phv* forthcoming)
Alex Potter (*phv* forthcoming)
**FREEDMAN NORMAND FRIEDLAND LLP**
155 E. 44th Street, Suite 905
New York, NY 10017
(T): (646) 350-0527
Email: tnormand@fnf.law
        kroche@fnf.law
        vel@fnf.law
        apotter@fnf.law

Tibor L. Nagy Jr. (*phv* forthcoming)
Tracy O. Appleton (*phv* forthcoming)
Chris Schafbuch (*phv* forthcoming)
David Moosmann (*phv* forthcoming)
**DONTZIN NAGY & FLEISSIG**
31 E 62nd Street
New York, NY 10065
(T): (212) 717-2900
Email: tibor@dnfllp.com
        tappleton@dnfllp.com
        cschafbuch@dnfllp.com
        dmoosmann@dnfllp.com

*Counsel for Brittany Edwards, on behalf of D.B. Barlow*